J-A15005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANTE GREENE | : | |
| | : | |
| Appellant | : | No. 1025 EDA 2020 |

Appeal from the Order Entered March 9, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007265-2016

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:          **FILED SEPTEMBER 10, 2021**

Dante Greene appeals from his March 9, 2020 judgment of sentence of life without the possibility of parole ("LWOP"), which was imposed following his convictions for first degree murder and related offenses.  After thorough review, we affirm.

On February 21, 2016, at approximately 2:30 a.m., Kyle Powell ("Powell") was sitting at the corner of 66th and Greenway, across the street from the La Sierra Market in the city of Philadelphia.  **See** N.T. Jury Trial, 1/15/20, at 34-35.  Powell was waiting for his girlfriend, Jacqueline Angelo ("Angelo"), to return from performing a "trick" when he observed Appellant and another man walking back and forth across Greenway.  **Id**. at 42-43. Appellant was wearing a gray hoodie with a yellow and orange emblem.  **Id**. at 43.  Powell knew Appellant to sell drugs "down the street" from the Market and had seen Appellant in the area "all the time."  **Id**. at 39.  Since Powell and

Appellant had gotten into an argument three days earlier, Powell paid close attention to Appellant's movements. *Id*. at 43. After Appellant and the unknown man had walked by him twice, Angelo arrived. *Id*. at 44.

As Angelo exited the vehicle, Wilson Diaz ("the victim"), who was standing across the street near the back of the Market, said, "[h]ey mommy, come here real quick." *Id*. at 44-46, 69, 149. Powell pointed out Appellant and another man that she did not know. *Id*. at 145. Prior to that night, Angelo had seen Appellant every other day for a year and a half. *Id*. at 166. She also noted that Appellant was wearing a gray hoodie. *Id*. at 167. Powell informed Angelo that he "didn't like the vibe" and wanted to leave the area. *Id*. at 145. Since Powell was "uncomfortable" with Appellant's behavior, Angelo ignored the victim's comment and they began walking away toward Gould Street. *Id*. at 46. As they were leaving, both saw Michael Robertson ("Robertson"), walking onto Greenway from 66th Street towards the victim. As they turned the corner, they saw Appellant, Robertson, and the victim standing close to each other and engaged in a conversation. *Id*. at 47.

Robertson lived next door to the Market and was selling drugs at 66th and Greenway at that time. N.T. Jury Trial, 1/16/20, at 18-19. Robertson encountered the victim, sold him marijuana, and walked back to his front steps. *Id*. at 19. Robertson heard an argument ensue between the victim and Appellant. *Id*. at 23. Appellant was demanding that the victim pay back the money that the victim owed Appellant. *Id*. at 23-25. Robertson heard a gunshot, then turned to see Appellant walking back towards the victim. *Id*.

- 2 -

at 25. He heard Appellant say, "[f]uck this shit," and saw Appellant shoot the victim a second time, before fleeing the area. *Id*. at 36.

Meanwhile, Powell and Angelo were sitting on the steps on Gould Street waiting for "somebody to serve us" drugs when they heard a gunshot, a pause, and then a second gunshot. *Id*. at 48, 151-52. After the shooting concluded, Powell and Angelo returned to Greenway and also found the victim lying on the ground bleeding. *Id*. at 49, 152-53. They observed Robertson and a male Powell knew as JR near the victim. *Id*. at 50, 156-57. Robertson called an ambulance. *See* N.T. Jury Trial, 1/16/20, at 26-27. Believing the victim to be deceased, Powell and Angelo left before the police arrived. *See* N.T. Jury Trial 1/15/20, at 51, 157-58.

An investigation followed. Officers obtained video footage from two surveillance cameras connected to the Market which captured the shooting. *Id*. at 216-17. The footage showed the victim standing in the gated yard behind the Market. The victim than walked just outside the gate as Robertson approached the entrance to the yard. After interacting for approximately one minute, Robertson and the victim moved inside the yard where they engaged in some sort of transaction. *Id*. at 219-20.

While Appellant and Robertson are still standing in the yard, Appellant entered the yard wearing a gray hoodie with an X-shaped emblem. *Id*. at 242. The three men appeared to be talking and exchanging items inside the gated yard for approximately two minutes. *Id*. at 233-36. Appellant and Robertson than exited the gated yard. *Id*. at 223. Robertson left, but

Appellant quickly returned and continued to interact with the victim in the gated yard's entrance. Within one minute, the victim began to retreat into the yard, and Appellant fired a gunshot directly at the victim. *Id*. at 225. Seconds later, Appellant fired another gunshot directly at the victim. The victim fell to the ground and Appellant exited the frame. Seconds later, Appellant returned and began searching the victim's pockets. While Appellant was still searching the victim's pockets, Robertson returned, looked at the victim, and left.

Later that morning, Robertson, Powell, and Angelo were interviewed by police. *Id*. at 158-60. All three gave detailed descriptions of Appellant and identified him from a single photo array. Appellant was arrested and charged with murder and related crimes. At the preliminary hearing, surveillance video of the incident was admitted, and Robertson testified, identifying Appellant as the shooter. N.T. Preliminary Hearing, 8/2/16, at 20. Robertson also testified that "a lot of people" had approached him since he talked to the police and that he was "scared" because "I'm getting threatened every day." *Id*. at 22. At the conclusion of the hearing, all charges were held for court. The Commonwealth relocated Robertson in an effort to stop the threats he had been receiving. *See* N.T. Jury Trial, 1/14/20, at 16.

On September 20, 2019, Appellant filed a motion to suppress the pre-trial identifications made by Robertson, Powell, and Angelo due to an allegedly illegally-suggestive identification procedure. The court held a hearing on Appellant's motion to suppress. At the conclusion of the hearing, the court

found that the single-photo array was suggestive, but it also concluded that each witness had an independent basis for their identifications of Appellant. N.T. Suppression Hearing, 10/7/19, at 112-13. Accordingly, the court excluded the photograph, but permitted the witnesses' identifications to be introduced by the Commonwealth. *Id*. After the Commonwealth filed a motion to reconsider the suppression of the single-photo array, the court held a second hearing. At the end of the second hearing, the trial court reversed its suppression order, finding that while the photo array was suggestive the identifications were nonetheless reliable because each witness "knew exactly who [Appellant] was." *Id*. at 10.

In December of 2019, the Commonwealth applied for a material witness warrant for Robertson, claiming detectives had been unable to locate or contact him. The trial court granted the application. However, after numerous attempts to contact Robertson, his relatives, and his girlfriends, the Commonwealth was unable to re-establish contact with Robertson.

On January 10, 2020, the Commonwealth filed a motion to admit the pretrial hearing testimony of Robertson. At a hearing, Detectives Graf and Joseph Centeno testified about the efforts the Commonwealth had undertaken to locate Robertson, which included contacting ten hospitals in the area, the morgue, searching the database of the Pennsylvania prison system, leaving multiple subpoenas at three residences with which Robertson was believed to have contact, and employing a task force to surveil another suspected residence. *See* N.T. Jury Trial, 1/14/20, at 11-90. At the conclusion of the

hearing, the court granted the Commonwealth's motion to introduce Robertson's former testimony from the preliminary hearing.

At trial, the Commonwealth read the preliminary hearing testimony of Robertson to the jury and admitted the surveillance video footage of the homicide. The Commonwealth also adduced testimony from Powell and Angelo, who recounted walking down the street when they saw Appellant and another man walk towards the victim. *See* N.T. Jury Trial, 1/15/20 at 31-47. Although neither individual witnessed the shooting, both reported hearing gunshots. *Id*. at 48-51. Therefore, the sole testimony positively identifying Appellant as the shooter came from Robertson's preliminary hearing testimony. Ultimately, the jury convicted Appellant of first-degree murder, carrying a firearm without a license, carrying firearms in public in Philadelphia, and PIC. The jury found Appellant not guilty of robbery.

On January 21, 2020, Appellant was sentenced to LWOP for first-degree murder. No further penalty was imposed at the remaining charges. Appellant filed a post-sentence motion alleging that the evidence was insufficient to establish his guilt because Robertson's prior testimony was improperly admitted, and that the verdict was against the weight of the evidence because Powell and Angelo allegedly testified that they were under the influence of narcotics. The trial court denied the post-sentence motion and this timely appeal followed. Both parties have complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1.      Did the trial court err by denying Appellant's motion to suppress identifications made by Jacqueline Angelo and Kyle Powell?

2.      Did he trial court err by granting the Commonwealth' motion to admit the preliminary hearing testimony of Michael Robertson?

3.      Was the evidence insufficient to convict [Appellant] on all charges?

4.      Was he jury's guilty verdict against the weight of the evidence?

Appellant's brief at 7.

Appellant's first claim pertains to the trial court's denial of his suppression motion seeking to exclude a photo of Appellant and the out-of-court identifications that flowed from it. *See* Appellant's brief at 23.

Our standard of review of a suppression ruling is as follows:

> We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Pruitt*, 951 A2d 307, 317 (Pa. 2008).

A pre-trial identification will not be suppressed as violative of due process unless the facts demonstrate that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of

irreparable misidentification." ***Commonwealth v. Russell***, 209 A.3d 419, 430-31 (Pa.Super. 2019). The reliability of an out-of-court identification is determined by considering the totality of the circumstances, which includes but is not limited to: (1) the witness' ability to observe the criminal act; (2) the accuracy of the photo array selection and other descriptions; (3) the lapse of time between the act and any line-up; and (4) any failure to identify the defendant on prior occasions. ***See Commonwealth v. Santiago***, 855 A.2d 682, 698 (Pa. 2004).

Accordingly, even if an out-of-court identification is suggestive, an in-court identification is admissible if there exists an independent basis for the identification. ***See Commonwealth v. Fisher***, 769 A.2d 1116, 1127 (Pa. 2001). In order to determine if an identification resulted from a basis independent of the suggestive identification procedure, the court considers the following factors:

> The opportunity of he witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation.

***Commonwealth v. Davis***, 17 A.3d 390, 394 (Pa.Super. 2011).

At the suppression hearing, Detective Francis Graf testified that he met with Angelo and Powell hours after the shooting. Both said that they recognized the person they saw walking toward the victim as a drug-dealer known to sell drugs at the intersection of 66th and Greenway. ***See*** N.T.

Suppression Hearing, 10/7/19, at 34, 59-60. Powell explained that while he did not know the individual's name, he had seen him approximately one hundred times over the past six months, and described him as a black male with a dark-complexion, thin build, height of 5'9" to 5'11", and with a beard and mustache. *Id*. at 35. The night of the shooting, Powell saw this individual wearing a gray hooded sweatshirt with an orange emblem on the front. *Id*. at 36. Meanwhile, Angelo also separately identified the man as wearing a gray hoodie the night of the shooting. While she did not know the individual by name, she had seen him around the neighborhood "roughly every other day or so for the last year-and-a-half." *Id*. at 43.

Detective Graf searched the police department's database of pedestrian and vehicle investigations to identify individuals who had been stopped in the immediate vicinity of 2029 South 66th Street over the past year and cross-referenced those results with individuals who matched the physical description given by the witnesses. *Id*. at 23. After a review of this database revealed that Appellant had been stopped several times in that time frame and that he matched the witness descriptions, Powell and Angelo were separately shown a single photograph of Appellant. *Id*. at 32, 44, 54-55. Powell and Angelo both definitively identified Appellant as the individual in the gray hoodie who they saw approaching the victim prior to the gunshots. *Id*. at 22-23, 26-44.

At the conclusion of the suppression hearing, the trial court ruled that the identification procedure was suggestive and precluded the admission of

the single-photo array. *Id*. at 112. However, the court held that the identifications, including the one at the preliminary hearing, were admissible. *Id*. at 113-14. The court explained its reasoning as follows:

> [A] single-image photo array is the least desirable form of identification that there can be. The court knows that. There is no reason not to put other photos in the array. That is suggestive.
>
> However, clearly, and absolutely, without doubt, these three witnesses[1] have an independent basis for their identifications of this [Appellant]. They have seen him over a hundred times, each of them. They know exactly who he is. The only thing they didn't know was his name. Had they known his name, a single photo would have been perfectly fine. They just didn't know his name but they knew everything else. They knew exactly who he was. They have seen him day-in and day-out.
>
> So although the photo array was suggestive, it could have been done better. So the photo array, itself, will not be able to come in. The identifications absolutely come in of this [Appellant].
>
> So, therefore, the Court finds that each of them had an independent basis for their identification of this [Appellant] and the motion to suppress the identification is denied, in-court identification denied.

---

[1] While he has not challenged Robertson's identification here, in his motion and at the hearing, Appellant also attacked Robertson's identification of Appellant on the same grounds. Robertson can be seen on the surveillance footage talking to the victim as Appellant approaches. He left the frame before the shooting took place. Robertson did not know Appellant's real name but told police that Appellant "hides out" at the second house from the corner on Greenway before you reach Upland Street. *See* Suppression Hearing, 10/7/19, at 46. Robertson described Appellant as a dark-skinned black male, about 5'10", 175lbs, approximately twenty-four years old, with a big beard. *Id*. Robertson also identified Appellant's clothing, which was black sweatpants, a gray hoodie, and white and peach colored Nike sneakers. *Id*. at 47. Robertson's description was used to help procure the single photograph of Appellant, whom he identified as the shooter. *Id*.

*Id*. at 112-13.

After the Commonwealth filed a motion for reconsideration, a second hearing was held on the suppression motion. *See* Motion for Reconsideration, 10/25/19, at 10. After listening to arguments from both sides, the trial court found that while the photograph identification procedure was suggestive, the identifications were nevertheless reliable because each witness knew Appellant. *Id*. at 9. Accordingly, the trial court reversed its earlier ruling and held that the Commonwealth could admit the photograph and the out-of-court identifications at trial. *Id*. at 10. In its opinion, the court reiterated its findings from the suppression and reconsideration hearings but also went into more detail about the reliability of the witness's identifications under the totality of the circumstances. *See* Trial Court Opinion, 8/19/20, at 9.

Our review of the record reveals that the trial court's factual findings are supported by the record and its legal conclusions are in line with the relevant precedent summarized above. The court credited Detective Graf's testimony that Powell and Angelo knew Appellant. *See* Suppression hearing, 10/7/19, at 34, 43. Detective Graf also testified that they were aware of where Appellant sold drugs and told him that they were certain in their identifications since they had seen him approximately one hundred times over the past six months and every other day for a year and one-half, respectfully. *Id*. at. 109. Further, Angelo and Powell's descriptions of Appellant were corroborated by the video footage depicting the shooter in a gray hoodie with an emblem on

the front. *See* Trial Court Opinion, 8/19/20, at 9. Finally, both identifications were made within seven to eight hours after the shooting. *Id*.

In light of the foregoing testimony, the trial court properly concluded that the victims recognized Appellant based on their own perceptions of him and not due to the single photo of Appellant shown to them by Detective Graf. All of the victims provided police with consistent, detailed, and accurate physical descriptions of Appellant. Accordingly, the trial court did not err or abuse its discretion when it declined to suppress the identifications made by Powell and Angelo.

In his second issue, Appellant challenges the trial court's admission of Robertson's preliminary hearing testimony on two grounds. *See* Appellant's brief at 20. First, Appellant attacks the trial court's unavailability determination after it found that the Commonwealth made a good faith, albeit unsuccessful, effort to locate Robertson. *Id*. at 19. Second, Appellant alleges that he was not given a full and fair opportunity to question Robertson about his motive and bias at the preliminary hearing. *Id*. at 21. We consider each claim individually below.

Pennsylvania Rule of Evidence 804(b), an exception to the rule against hearsay, allows for the admission of a witness's former testimony in certain limited circumstances:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1)    Former testimony. Testimony that:

- 12 -

(A)    Was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B)    Is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

*See* Pa.R.E. 804(b).  Hence, Rule 804(1) allows for the admission of prior testimony of an unavailable witness.  A declarant is unavailable when he or she "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance."  Pa.R.E. 804(a)(5).

However, before the Commonwealth can introduce the prior testimony of an unavailable witness, the Commonwealth must first show that it made a good faith effort to try to produce the live testimony of the witness, yet, through no fault of its own, was prevented from doing so.  *See Commonwealth v. Lebo*, 795 A.2d 987, 990 (Pa.Super. 2002).  Whether the Commonwealth has demonstrated a good faith effort to procure the declarant's attendance at trial is a question of reasonableness. *Commonwealth v. Blair*, 331 A.2d 213, 215 (Pa. 1975) (holding that the rule "does not require that the Commonwealth establish that the witness has disappeared from the face of the earth; it demands that the Commonwealth make a good-faith effort to locate the witness and fail").  It is within the discretion of the trial court to determine what constitutes a good-faith effort

to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion. *Commonwealth v. Douglas*, 737 A.2d 1188, 1196 (Pa. 1999).

At the hearing on Appellant's motion to exclude the prior testimony, Detectives Centeno and Graf testified about the police efforts to find Robertson. *See* N.T. Jury Trial, 1/14/20, at 11-90. Between October 2019 and January 2020, when trial began, the detectives had checked local hospitals, Pennsylvania prisons, the morgue, left multiple subpoenas for Robertson at three different addresses, sent fliers and posters to the police districts in which all three houses were located, obtained a material witness warrant for Robertson's arrest, and used a police database to search for other addresses associated with Robertson. Additionally, for three days during the week prior to the start of trial, the Southwest Task Force staked out the house where Robertson lived with his girlfriend. *Id*. at 12-24, 39-52, 57-58.

At the conclusion of the hearing, the trial court denied Appellant's motion to exclude Robertson's testimony, finding that while police had not made "the best of efforts," there was "a lot of work done by the detectives" after the signing of the material witness petition. *Id*. at 90. Accordingly, the court found that the Commonwealth had met the standard of reasonableness required to establish unavailability. The trial court also opined that the fact that the Commonwealth had not sought a material witness warrant until

December 2019 was of no moment, because it would not have issued one earlier. *Id*.

The record supports the trial court's finding that the Commonwealth's efforts constituted a good faith effort to procure Robertson' attendance at trial. *Accord Commonwealth v. Douglas*, 737 A.2d 1188, (Pa. 1999) (finding that the Commonwealth made a good faith effort to locate a witness where police searched for the witness at his apartment, his mother's apartment, several bars he was known to frequent, and his girlfriend's house). Police resources are not unlimited, and the Commonwealth exerted a reasonable effort to locate Robertson, which is what the good faith standard requires in this context. *See Commonwealth v. Wayne*, 720 A.2d 456, 467 (Pa. 1998) (rejecting argument that Commonwealth did not make reasonable efforts to find witness because they did not begin looking until four days before trial); *see also Commonwealth v. Blair*, 331 A.2d 213, 215 (Pa. 1975) (explaining that the rule "does not require that the Commonwealth establish that the witness has disappeared from the face of the earth; it demands that the Commonwealth make a good-faith effort to locate the witness and fail"). Accordingly, the first sub-part of Appellant's claim fails.

Next, Appellant alleges that the admission of Robertson's prior testimony violated the confrontation clause because he was denied a full and fair opportunity to cross-examine Robertson at the preliminary hearing. *See* Appellant's brief at 20.

Whether the trial court's admission of Mr. Robertson's preliminary hearing testimony violated Appellant's constitutional right to confront the witnesses against him is a question of law, for which our review is *de novo* and plenary. ***See Commonwealth v. Mitchell***, 152 A.3d 355, 358 (Pa.Super. 2016). Generally, an unavailable witness's prior recorded testimony is admissible at trial, and will not offend the right of confrontation, where the defendant had counsel and a "full and fair opportunity" to cross-examine that witness at the prior proceeding. ***Commonwealth v. Bazemore***, 614 A.2d 684, 687 (Pa. 1992).

For a defendant to establish that he did not have a full and fair opportunity to cross-examine the witness at the previous proceeding, he must show either that he was deprived of "vital impeachment evidence" at or before the time of the previous proceeding, or, if he was not, that he was improperly restricted in his cross-examination of the now-absent witness. ***Id***. at 590 (excluding prior testimony for an unavailable witness on the grounds that the Commonwealth knew, but did not disclose, vital impeachment evidence before the earlier proceeding); ***see also Commonwealth v. Borders***, 560 A.2d 758 (Pa. 1989) (prohibiting the use of prior testimony of an unavailable witness where the trial court improperly restricted trial counsel's cross-examination of the witness). "The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the

- 16 -

preliminary hearing stage as extensively as he might have done at trial."
***Commonwealth v. Leak***, 22 A.3d 1036, 1045 (Pa.Super. 2011).

Appellant does not assert that the Commonwealth withheld vital impeachment evidence. Instead, he alleges that the Commonwealth impermissibly restricted his cross-examination of Robertson by objecting during trial counsel's questioning regarding the scope of Robertson's immunity agreement. ***See*** Appellant's brief at 21. However, a review of the record belies Appellant's argument.

At the preliminary hearing, the Commonwealth asked Robertson if he was promised anything in exchange for his testimony at Appellant's preliminary hearing. ***See*** Preliminary Hearing, 8/2/16, at 30. Robertson replied that he had been granted immunity for selling the victim marijuana on camera immediately prior to the homicide. ***Id***. On cross-examination, Appellant's trial counsel asked more than eighty questions about Robertson's involvement in the drug deal, his criminal record, and his appearance on the surveillance video. ***Id***. at 31-46. After trial counsel accused Robertson of engaging in a larger drug conspiracy, the Commonwealth objected. ***Id***. at 41-42. The trial court held an off-record sidebar before overruling the objection. ***Id***. at 42. Trial counsel continued his questioning regarding Robertson's alleged involvement in a larger drug dealing conspiracy, at which point Robertson agreed that on the night of the homicide, he had been involved in drug activity at 66th and Greenway with Appellant and another man named

- 17 -

Keys. *Id*. at 42. The Commonwealth made no further objections and trial counsel concluded his cross-examination several questions later. *Id*. at 46.

Since the record reveals that the trial court did not constrain trial counsel's inquiry, and that Robertson admitted he was granted immunity for prosecution for selling marijuana at the time of the murder, we cannot conclude that Appellant was deprived a full and fair opportunity to cross-examine Robertson on this specific ground. *See Leak, supra* at 1045 ("The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial."). Thus, both of Appellant's arguments pertaining to the trial court's admission of Robertson's preliminary hearing testimony fail. No relief is due on Appellant's second set of claims.

In his third claim, Appellant challenges the sufficiency of the evidence to support his convictions for first-degree murder, carrying a firearm without a license, and carrying a firearm in public. Our standard of review when considering a challenge to the sufficiency of the evidence is

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

- 18 -

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant's arguments are not based upon the statutory elements of the crimes for which he was convicted, but rather the sufficiency of the evidence to identify him as the perpetrator. *See, e.g. Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa.Super. 2018) ("In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes."). Specifically, Appellant argues that the evidence was insufficient because the trial court erred when it found Robertson unavailable and admitted his preliminary hearing testimony. *See* Appellant's brief at 25-29. Since Robertson's former testimony was the only evidence presented identifying Appellant as the shooter, and it should not have been admitted, Appellant alleges that without Robertson's testimony the evidence would have been insufficient to prove his identity as the perpetrator. *Id*.

Appellant's argument disregards our standard of review. When evaluating a sufficiency claim, we consider all of the evidence admitted

without regard to any claim that some of the evidence was wrongly allowed. *See Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa.Super. 2010). Since Appellant has not advanced any other arguments as to why the evidence was insufficient to support his convictions, he has failed to persuade us that he is entitled to relief on this claim. Accordingly, his third claim for relief fails.

In his final issue, Appellant seeks a new trial on the ground that the verdicts were against the weight of the evidence. Such a claim is addressed in the first instance to the discretion of the trial court. As we explained in *Commonwealth v. Stokes*, 78 A.3d 644, 650 (Pa.Super. 2013):

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id*. In short, a trial court should not overturn a verdict on this basis unless "it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016).

Our standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings

and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted; emphasis omitted). "An abuse of discretion is not a mere error in judgment but, rather, involves, bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Kane*, 10 A.3d 327, 333 (Pa.Super. 2010).

Appellant argues that the respective testimony of Powell and Angelo that they saw Appellant approach the victim moments before the shooting was incredible, since they also admitted to being under the influence of multiple narcotics on the night in question. *See* Appellant's brief at 31. Appellant also alleges that since Robertson was "a few feet away when the killer fired the fatal shots," he was "a possible co-conspirator" in the homicide and, thus, had motive to lie. *Id*. at 31-32.

The trial court, in denying Appellant's claim, addressed Appellant's claim as follows:

> In the instant matter, the Commonwealth presented evidence that, if believed by the jury would establish that Appellant shot the decedent with the specific intent to kill. The Commonwealth presented the testimony of Michael Robertson, who was present and interacting with Appellant and the victim in the rear of the La Sierra Market. Robertson overheard Appellant demanding the victim pay him monies the victim owed him. Robertson walked off a few feet, heard a gunshot, and turned to see the victim wounded. He then heard Appellant say, "[f]uck this shit," and saw

him fire a gunshot at the victim's head. The surveillance video of the shooting depicts the shooter wearing a gray hoodie with an X-shaped emblem. Two Commonwealth witnesses, Kyle Powell and Jacqueline Angelo, identified Appellant as the person in the gray hoodie with the emblem who they saw approaching the victim moments before they heard gunshots.

Additionally, Angelo and Powell both testified that they had seen Appellant on numerous occasions in the neighborhood prior to the night of the incident, which would offer support to the contention that the two witnesses were capable of accurately identifying Appellant as the individual in the gray hoodie.

Appellant's claim that the jury's verdict was against the weight of the evidence is without merit.

Since the jury's conclusion that Appellant was the person who shot and killed the victim on Greenway Avenue was not against the weight of the evidence, it follows that the jury's verdicts conviction Appellant of carrying a firearm without a license and carrying a firearm in public in Philadelphia were also not against the weight of the evidence.

Trial Court Opinion, 8/19/20, at 16-17 (cleaned up).

Our review of the record reveals no indication of bias or ill-will on the part of the trial court in its thorough analysis. Appellant is merely rehashing the arguments he made at trial, which the jury rejected, as was its prerogative. *See Commonwealth v. Flor*, 998 A.2d 606, 626 (Pa. 2010) (reaffirming the jury is entitled "to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder"); *see also* N.T. Jury Trial, 1/17/20, at 112-15 (arguing in closing argument that Robertson "might very well be an accomplice in this case, a co[-]conspirator who [acted as lookout for] the shooter," because he walked a few steps away right before the shooting occurred); *id*. at 125-27 (arguing

in closing argument that Powell and Angelo are "junkies" who were high at the time of the crime so there testimony was unreliable). Accordingly, the trial court did not abuse its discretion by denying relief on Appellant's weight claim, and Appellant is entitled to no relief.

For these reasons, none of Appellant's issues merits relief from this Court, and we therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2021